Judge Dennis, Judge Haines, and I are ready. Mr. Demmons, you are up. Thank you, Your Honor, and good morning. Larry Demmons on behalf of the Plaintiff Appellant Calvin Lewis. I don't want to simply rehash everything in my brief, as I know you're all familiar with what's in the briefs, but rather what I'd like to do is touch on some of the primary issues in this appeal and try to address some of my opposing counsel arguments as well. First, I'd like to discuss the primary claim in this case, which is my client's claim that the defendant violated his fundamental right to intimate association guaranteed by the U.S. Constitution when it terminated his employment. But before getting to the requirements for demonstrating such a violation, I used the word fundamental when I talked about the right to intimate association and used it throughout my brief, and I think it's important because whether or not the right to intimate association is fundamental or is a fundamental right is important in determining what levels of scrutiny should have been applied to defendant's anti-paternization policy. Now, in Roberts v. United States J.C.'s, the U.S. Supreme Court stated that the right to intimate association and the freedom to choose, quote, to enter into and maintain certain intimate human relationships is a fundamental right, and that notion was reaffirmed three years later in the Supreme Court's decision in Board of Directors of Rotary International v. Rotary Club of Duarte. Therefore, I would strictly submit that the right to intimate association is a fundamental right. Now, with that in mind, the question becomes, did Mr. Lewis set forth sufficient allegations to substantiate his claim that he was terminated in violation of his fundamental right to intimate association? First, Mr. Lewis had to allege sufficient factional information to show that the relationship he had with Ms. Doe was within the ambit of a protected right of I don't know that I didn't understand someone to be claiming he was not intimate with Jane Doe. I thought the question really was, which precedent is more important, the Louisiana deputy debating case or the Zablocki? And let me ask you this, which case has facts closer to your case, Zablocki or the Louisiana debate? Yeah, I would submit that it's the Louisiana debating case that's more applicable and on point, and I believe that's so because I believe the Supreme Court's decision in J.C. states that the right to intimate association is a fundamental right, and then this court held in the debating society in the Louisiana debating case that when there is an infringement on a fundamental right, that strict scrutiny has to apply. Well, but both Louisiana debating and J.C.'s were dealing with clubs, if you will, to use a generic term. Zablocki was dealing with marriage, which seems closer to the Jane Doe and your client relationship than the whole club issue. Well, that's true, Your Honor. With respect to the actual facts of the case, I guess Zablocki would apply more aptly with respect to whether the case, but I don't think the character of that right, whether it be a club as well as in the Louisiana debating case or the marriage in Zablocki, is the issue as we frame it. We believe that because the right to intimate association is a fundamental right, regardless of the nature of the relationship, it's entitled to strict scrutiny when there are impingements on that right. Now, getting back to one of the points that Your Honor just made, the defendant doesn't contest the fact that the intimate association that Mr. Lewis was engaged in was in fact qualifying as an intimate association, nor did the district court dispute that fact as well. So what we get to and what Your Honor I think is getting to right now is the real dispute in this case, and that is what standard of review should apply to determine the constitutionality of and as I just mentioned, it's our position that given the fact that Mr. Lewis is right, intimate association is a fundamental right. We submit that the proper standard review is strict scrutiny, and we do that, and we put forth that proposition, Your Honor, based on this court's decision in Louisiana Debating and Literary Association, where this court specifically held that a fundamental right, that as a fundamental right, restrictions on the right to intimate association are subject to strict scrutiny. Now, my opponent takes issue with this court's ruling in that case, as you saw in the brief, claiming that it was wrongfully decided and it should be ignored, but I would note that my opponent does not cite a single case stating that Louisiana Debating case was overruled, and certainly not one from either this court or the U.S. Supreme Court. In that court, Your Honors, does not stand alone. My brief cites several other cases in footnote 18, where several other courts have applied strict to infringements on the fundamental right of intimate association. In those cases, as I mentioned, are listed in footnote 18. Ultimately, Your Honor, I would submit that as a fundamental right, a regulation or policy that impinges on the right to intimate association is entitled to the same level of scrutiny as if the regulation or policy were based on race or religion. There is no question that if the policy at issue here prohibited a deputy from engaging in a relationship with someone because they were African American or Catholic, then impingements on the right to intimate association are on the same level as those based on race and religion. Therefore, policies that seek to infringe on those rights must be scrutinized using the same level of strict scrutiny. Now... Go ahead. I'm sorry, Your Honor, do you have a question? I was going to ask you if... I know you didn't argue this, but in the alternative, it seems to me that this type of relationship, a 10...over 10-year stable relationship in which this man has dedicated himself to this partner and her children, is more like a marriage-type relationship. And under the state constitution, affiliations, which I believe this would fall squarely under, are protected with at least intermediate scrutiny. So even if we don't...if you don't apply, for some reason, strict scrutiny, although I agree with you, our precedent is there, and I'm not sure if the district court adequately distinguished it or dealt with it. What do you say about intermediate scrutiny prohibiting arbitrary discrimination against affiliations, particularly those like this one in which you have a 10-year stable relationship? And what about if he had married this woman? Would that fall under Judge Ashe's rational basis decision? Your Honor, I agree. I think that this regulation would not survive under intermediate scrutiny. I would also submit that it doesn't even survive rational basis scrutiny. The fact that Mr. Lewis, the plaintiff, was not married, I don't think has a determinative effect. I think certainly had he been married, some of the...I guess some of the qualifications or the indices of the right of his intimate association would be stronger in some people's eyes, but I certainly believe that the type of relationship that he had certainly qualifies as an intimate association and therefore would survive any level, or the policy should be invalidated under any level of scrutiny. Thank you, sir. Yes. Now, going back to my position that strict scrutiny should apply, obviously, in order to survive strict scrutiny, the defendant must show two things, that the state action serves a compelling state interest, which, too, cannot be achieved through means significantly less restrictive of one's associational freedom. Now, according to the defendant in this case, the interests supporting the policy at issue here are as follows. And essentially, they amount to one thing, Your Honor. They amount to, Your Honors, they amount to a question of the reputation of the St. Kennedy Parish Sheriff's Office among the community. Now, with respect to the alleged justifications put forth by the defendant, it is clear that the determination of whether those justifications were valid is a highly fact-intensive inquiry, which is generally not the determination or not a determination that should be made on a motion to dismiss. I'm wondering, Mr. Dennis, getting back to Zavlocki, which I don't think we can ignore, do we have to find first that there is a direct and substantial impact or prohibition on your client's right to intimate relationships before we start scrutinizing the rule? I mean, which one is the question first? First, do we look at the rule just by itself? Or do we say, was Mr. Lewis prevented from having intimate associations in general? Was that a direct and substantial impact? And then, if it is, we apply strict scrutiny. Your Honor, I would respectfully submit that the initial question is, is this an and as a result, I would submit that is the determination. How do you rate impingement? Is it the direct and substantial? Or is it the… Because a lot of things might make it harder for your marriage. I mean, some people being quarantined in place, that's making it harder on them. But no one would say that's an impingement on that right. And so the question is, direct and substantial, where does that fit in the picture? Because I'm not prepared to ignore Zablocki, however I view Louisiana debating. I feel that I must follow the U.S. Supreme Court unless the U.S. Supreme Court has itself overruled itself. Well, Your Honor, I think there's certainly an argument to be made that any impingement on a fundamental right is warranted strict scrutiny. But I would argue that in this particular case, the impingement is direct and substantial. If we want to go down that road and give credence to Zablocki, because as I'm going to mention shortly, I think the state put Mr. Lewis in a position of having to choose between his employment and his relationship. And I think that's an improper choice to be put to Mr. Lewis in a situation. And therefore, even if we were looking at this under the direct and substantial requirement of Zablocki, that it still applies and the policy requires strict scrutiny. But, I mean, well, I guess that's the hard part again, is he clearly can and has stayed with Jane Doe, found another job, went on with his life. So is it really a direct and substantial impact since he's still with Jane Doe and he's still employed and he's not, you know, the job you love and whatever. But I'm just asking, where is that line, if you will, on there being not just an indirect impingement or an insubstantial impingement, but a direct and substantial impingement? Well, I recognize and agree, Your Honor, that trying to place each one of these cases on a spectrum is difficult. I would say, though, in this case, that this was a Lewis' associational rights, because he lost a job that he held for numerous years. He'd risen to the rank of captain at St. Timothy Parish Sheriff's Office. When he was terminated and received that other job at the Mandeville Police Department, he had to start over as a deputy with a substantial loss in pay. So the fact that, yes, he was able to find another job, he didn't leave his relationship, those are true. But he had to make substantial sacrifices and lose a substantial amount of salary and prestige and seniority at his job. And I think there are cases that I'll cite in my brief where the court has said that the state can't condition someone's exercise of his fundamental constitutional rights based on wanting to What about any nepotism policies? You meet somebody at the Sheriff's Office and y'all get married, now one of you has to leave. How does that play out? Well, I think those policies may have to be looked at as well, Your Honor. And I'm not prepared to opine on something like that at the moment. But I would say that any policy that conditions your employment solely on the basis of your relationship with someone else I think are going to be subject to at least some level of scrutiny. And in my opinion, because it's a fundamental right, it's going to be based on strict scrutiny. Well, there are a bunch of antinepotism out there. For example, a judge's spouse, and I can't remember which degree, but at least first degree relations, can't become a federal judge in the same circuit or district that that judge is in. Well, so that's an impingement, if you will. There's all kinds of rules, and I cannot hire a relative of mine within a certain degree as my law clerk. And so on and on, I mean, there's a lot of antinepotism policies out there in the world. And to say they all have to be subject to strict scrutiny. Well, Your Honor, I would submit that in some of those cases, particularly the ones that you provide scrutiny on the basis that there is a compelling interest in preventing the appearance of favoritism or preventing, you know, issues like that from arising. I'm certainly not suggesting that every nepotism policy, no matter what would have to be struck down, I'm simply suggesting that those policies, you know, should be looked at to determine whether the interest of the state in enacting those policies is sufficient such that they're entitled to impinge on the fundamental right of association or right of marriage or whatever that relationship is to warrant the impeachment that's at issue. Do you have any cases that you can point me to that deal with antinepotism applying strict scrutiny? I don't, Your Honor. You know, getting back to my argument, one of the things that I did want to bring up was that, and Your Honor touched on it, is the justification for terminating my client was that he was going to be, that there would be a reputational harm to the St. Anthony Parish Sheriff's Office because he was viewed as someone who was living with a convicted felon. I submit that it's very difficult for the St. Anthony Parish Sheriff's Office to set forth that position with any credibility when every law enforcement agency in the surrounding geographical area, including the Manitoba Police Department, New Orleans Police Department, Jefferson Parish Sheriff's Office, State Police, all have anti-patronization policies, but none of them prohibit the relationship between Mr. Lewis and Jane Doe simply because she was a convicted felon. In fact, as I believe Judge Dennis recognized, or perhaps it was Your Honor, the Manitoba Police Department hired Mr. Lewis with full knowledge that his spouse, or excuse me, his girlfriend, the woman he's been living with for over 10 years, was a convicted felon. So I submit that the district court's crediting the St. Anthony rationally related interest simply doesn't stand up in light of not only the allegations that were made in the complaint, but also the information that was submitted for which I requested leave to amend, which wasn't granted. And that's the final thing I want to say before my time runs out. Mr. Lewis requested leave to amend. He specifically set forth the information that he identified that he would provide in an amended complaint. The district court did not even address that issue, did not even address Mr. Lewis's request to amend. Therefore, I will submit it's impossible to say that he did not abuse his discretion or that the amendment would have been futile because there's absolutely no discussion whatsoever about Mr. Lewis's request to amend, which I submit would certainly have cleared up the vast majority, if not all, the issues that the district court had with Mr. Lewis's complaint. How was that brought to the judge? How was that brought? Was it just the filing of the motion? Was there a conference or any discussion about the motion to amend and the judge just ignored it or it was just your filing? No, Your Honor. It was simply the request in the opposition to the motion to dismiss in which I specifically requested leave to amend. It was never addressed by the court or to the parties. In refreshment, was there an opposition file to your motion to amend by the other side? It was not a separate motion to amend, Your Honor. I included it in the opposition to the motion to dismiss my request to leave to amend and I believe my opponent did oppose that in his requirements. Okay, well that's why I was trying to clarify in my mind how the judge was aware or not specifically about the amendment because that's what I understood. It was part of your opposition. Otherwise, I'm not suggesting that it was imperfect in any way. I was just trying to get to how it was teed up front and center because of your argument that the court didn't address it head on and I was just wondering, you know, was it focused on in a specific way to where, you know, there it is or did the other side specifically point or arguably was it kind of subsumed within the overall filing in opposition to which the other side such that that might account for the judge not even mentioning it? Yes, it was listed after I set forth my reasons for why I thought the motion to dismiss should be denied. I specifically set forth a specific section at the end of the opposition to the motion to dismiss asking the court to leave to amend to provide the factual information and again I believe my opponent objected to that request in the reply but I'll let him answer that. Did you ask to amend with respect to the selective enforcement defense claim that you made? I did, your honor. I asked for leave to amend to provide additional information with regard to the right to intimate association claim, the selective enforcement claim, and the overbreath claim, I believe. Yes, sir. All right. Thank you. All right. Thank you. You've reserved your rebuttal time for two minutes. Mr. Collings? Yes, sir. You hear me and see me okay? Got you. Okay, great. I'm going to stand unless you want me to sit back down. I think it'd make the angle of the camera a little bit better so I'll get right into it. First of all, just for the visual, who's in the room with you? This is my associate, Cody Acosta. Good morning, your honor. Good morning. Press ahead. Well, again, good morning, your honor. It's been a court. It's always an honor and a pleasure and I appreciate the opportunity to appear in these unusual circumstances that we find ourselves. I'd like to kind of refocus and get back on what exactly the plaintiff alleges and then dispose of those in order. The plaintiff, in this case, alleges that the sheriff's anti-fraternization policy is unconstitutional and selectively applied. He alleges it violates the First, the Fifth, and the Fourteenth Amendment to the United States Constitution. He alleges that strict scrutiny should apply because of the intimate nature of his relationship. Plaintiff alleges it is unconstitutionally overbroad, that being the anti-fraternization policy, and it violates the Fourteenth Amendment. He also alleges that it was the anti-fraternization policy was selectively enforced in violation of the Equal Protection Clause of the Fourteenth Amendment. Now, I will follow, I will go through these arguments in the same order that the district court addressed them because I found that that was a very efficient way to dispose of them one after another. With respect to the right of association under the First and Fourteenth Amendment, I think Judge Haynes, you really latched on to what is, I think, the question here with respect to this issue. We will accept for purposes of this argument and this issue before the court that Mr. Lewis's relationship with Ms. Erika is intimate, and it is close, and it is, you know, all the marks of a marriage and everything but name. He's living with her. He's raising her children. So for the sake of the discussion, let's assume it is intimate. I would suggest, however, that's not the end of the discussion, as the plaintiff would suggest, that it's intimate, therefore strict scrutiny should apply, and when it does, then the paraphernalia... Well, I don't want to assume that. I'm not sure if the courts have ever said one way or the other that just living with a woman or a man, and cohabitating is the same as a marriage. I think marriage still gets a little bit higher level of scrutiny, but I will admit that it is at least intimate, and it is closer than what one would have and say, I'm joining the Jaycees or the Absolutely, Judge. It is a close and intimate relationship. We will assume that and concede it for purposes of today's argument. But that is not the end of the analysis, because this is not a case where the state of Louisiana, or the sheriff for that matter, is telling Mr. Lewis, if you get into this relationship, we will use the power of the state, the law, to punish you for this. We will put your life and liberty at risk. That's not the issue. And that may be the case, and that may get you to strict scrutiny if that was the case, but it's not. And just as Judge Hayes pointed to, this is no different from a practical standpoint than an anti-nepotism clause, or policy provision, which says, you can work here, but you can't work here and also marry your supervisor, if this was a county government, or a school board, or a sheriff's office. Just the same as in this case, where it's the sheriff is saying, you can work here, but you can't work here and also have a close, intimate, sexual relationship with an inmate, or someone who is a known convicted felon. And Mr. Lewis doesn't dispute the fact that Ms. Doe is a felon. He doesn't dispute that he's always known she was a felon. He only disputes that, because she's very close and intimate to me, I should be able to live with her being a felon, and my job shouldn't be put at risk. And that's not the law. The district court listed a number of cases, so did we in our brief. Did he concede that he knew about this policy before he started a relationship with her? I don't think he ever disputed it, Your Honor. It's nowhere in the brief or in his complaint does he say, I had no idea this policy existed. What he alleges is, I started dating this woman in 2006 or 7, I believe. And then when the new sheriff took office, which is Sheriff Randy Smith, the current sheriff, there was a Facebook post that said something about a newly promoted captain, which he took to mean that related to him. And then he self-disclosed the possibility that this was an issue. And then an internal affairs investigation was concluded, and Mr. People throughout the land. What are the dates of Smith's coming into office and this occurrence? All right. Randy Smith took office on July 1, 2016. This occurred, I believe, the Facebook post, I believe, was early 2017, somewhere around January, I believe. And again, it didn't name him, but it simply said a newly promoted captain of which that included Mr. Lewis. He was a new captain promoted incidentally by the current sheriff. So that was in January. And in May of 2017, Mr. Lewis was called into internal affairs, confronted with the information that Ms. Doe was in fact a known felon. And he was asked if you are in fact living with her. He admitted he was. He was given a choice. Do you want to maintain this relationship or do you want to stay here at the sheriff's office? Because you can't have both. He was given that choice. He indicated to the internal affairs department or the sheriff that he would not terminate his relationship with Ms. Doe. And then he was terminated. So if he had married her, would the same thing happen? Yes, sir. It would have. And judge the district court, if we uphold it as precedent to that effect. Again, I don't think that there's any case law out there that says government cannot make a difficult choice for people with respect to their partners. It is not to say that we're going to lock you up or deny you the right to marry anyone you so choose. The issue is, can government have a legitimate basis to require people to make a choice, whether it's is it the love of their life or is it the job? And people all and judge Haynes, you kind of touched on that with your questions about anti nepotism policies. That's a choice that people are confronted with all over this country all the time. Government makes people make those hard choices. That doesn't mean they're unconstitutional. That's part of. But those some of those provisions are more nuanced in enforcing their so-called compelling right. No, they allow for transfers and things like that here. This is a. You either lose your job or you lose your your wife. Well, arguably, that's true. But just as in the case that we talked that are in the district courts where you've got Eisen Eisenbarth, Stevens, Plummer, the the Border Patrol's case, which is cited in our brief, which is the James versus Dale decision out of the federal court, federal appeal court in D.C. that essentially government has a right to make these hard choices to its employees. And anti fraternization policies are legitimate exercise of government's prerogatives, which is to which is to make sure that its employees are beyond reproach, that the government they're not compromised, that the government integrity of the the our decision and the debating society and Boston Club and all of those elite. Clubs that we said are fundamental rights of association and in our state constitution, we give at least intermediate scrutiny to affiliations that an individual has. How can we depart from all of that and apply these other circuits provisions? Well, judge, I would. How do you. I'm not satisfied with what Judge Ash said about our debating our clear precedent. I would say the four members of the Boston Club, their association rights. This man is affiliated with someone who's very close to his wife. Well, I would suggest to you, Judge, that this is different. This is not the same case. This is not the government imposing itself on the members of a club saying you either do this or we will find you. We will put you in jail. You will do what we tell you to do. I allow these other people into your club or the full force of government will come down on you. That's not the case here. And again, the cases throughout the land on nepotism and fraternization recognize this clear distinction, which is it's not the government telling you you can't do something. And if you violate it, we're going to come down on you, make you pay a penalty with either monetarily or your liberty. The government simply say you can't have both. You can't have our paycheck and also the job. And that is a choice that has been recognized as legitimate throughout the land. Departments of Corrections have the same choice all over the world, all over the country where they and the cases are in both our briefing and in the district court's opinion, which say you can't have Department of Corrections employees marrying inmates. And that's been a legitimate finding and a legitimate exercise of government prerogative all over this country for reasons which are readily apparent. We don't want our inmates and our correctional staff getting married because obviously that's going to cause the whole system to be questionable. Is this inmate going to be treated the same as everyone else? Is this guard going to do her job or his job to this to the extent we would request? Because now he's got his he's got his wife on the other side of the bars. But apparently nowhere else in Louisiana do we have this. I'm sorry, say again, your honor. Apparently we don't. Not all police departments impose this requirement. This man has been hired by the Mandeville Police Department, as I understand it. Well, Judge, I would simply suggest to you that's nowhere in the record, whether I know the plaintiff said that I don't know what the Mandeville policy is. Frankly, don't really know what any policies are beyond the sheriff's, the one I'm defending today. But I would suggest to you that that's really not the question, whether or not Mr. Collins, doesn't that make it much less of a direct and substantial impact if he has the freedom to get jobs all across Louisiana? Absolutely. Yes, your honor. It's a question. The reason for it, I agree. But it also suggests that it's not a direct and substantial impact on his rights because he's not left homeless or without any ability to make money by this rule. Absolutely. Absolutely. Your honor, that that goes back to the heart of it, which is we're giving him a choice. You would be able to bring out at trial. We could, but frankly, I don't think it should ever get to that point, your honor, based on the law, based on the precedent, based on cases throughout the country that all recognize that a legitimate government interest is certainly enforced in this case. Because strict scrutiny is obviously inappropriate. It's got a clear precedent. I would disagree with your honor. I think those cases that we talk about the debating society, that's not a clear precedent. That is not that is not the state saying you can you can have a relationship or you can have a job, but not both. That is not the case. That is those other cases that you talk about where the government's coming in and telling you, you have to do something or we will take your money or take your liberty. That's a huge distinction that I can't cannot be overlooked. That's the distinction between these cases that I'm talking about and that that the case, your honor, is talking about the debating society. And again, what the what? I don't know. It seemed to me like this is more of intrusion than that was sought to be imposed in the debating society. I don't think so, because government telling you your life and liberty and your property is at risk if you don't do what we tell you to do. This is simply saying you can't have the job and the related prohibited relationship. You can't have them both. Pick one or the other. Your choice, your liberty to choose. But we can't get we're not going to give you both. Just like a federal judge can't hire their son to be his law clerk. You can say, well, I'm not going to be a federal judge anymore. So I'm going to so you can go get a job in this court. You have that choice. Everyone has choices in this. And it's recognized. And I would I would remind the court also that's right. I think we do have some federal judges who've had law clerks become their wiser. And they don't stay on the job. But that's either here or there, I guess. Well, I was simply addressing a point made earlier. I really I'm not obviously an expert on that. I tend to think that there are nepotism provisions throughout government on all levels, federal, state and local. And they're all valid because they serve that legitimate government interest, which is we don't want government to become a bastion of family connections. We want government to be public service. And I think this again. And so the rationale between a nepotism policy and a fraternization policy is exactly the same. And they're both legitimate and they both should be upheld under the rational basis. So and I would also just finish that one point, Your Honor. I would also submit to you that whatever the state constitution might say and whatever scrutiny might apply under a state constitutional provision under our federal 1983 statutes, they're completely inapplicable. Because 1983 gives right to federally protected constitutional rights, not state protected constitutional rights. So I'm going to move on to the just hit them briefly. The procedural due process claims under the Fifth Amendment never briefed, never articulated, and the district court was correct in dismissing those. The procedural due process under the 14th Amendment. Again, the district court noted properly that there was no property interest alleged, briefed or otherwise, and thus it was properly dismissed. With respect to equal protection under the 14th Amendment, the court here, the district court here, correctly noted that the plaintiff has to allege and ultimately prove that he received a different treatment than others similarly situated and that this different treatment stemmed from a discriminatory intent. The plaintiff in this case never alleged it, let alone proved it. And I know it's not a burden to prove on a motion to dismiss, but you at least have to and that's going to dovetail into the affair to allow him to amend in a moment, but I just wanted to make that point. The next would be the over breadth challenge and the vagueness challenge under the 14th Amendment. The district court was correct. The over breadth allegations were obviously legally deficient and were properly dismissed. With respect to the vagueness arguments, I would direct the court to look at page 31 of our brief. We have the actual policy there for the court to look at, and I don't know how the policy in question could ever be less vague. It states, romantic or intimate, personal or other close relationship between an employee and a known felon, transitional work program inmate or any incarcerated individual prohibited. So how is that policy in any way, God's greener, ever going to be vague? Romantic, intimate, I think we all know what that means. And what is the definition of a known felon, inmate or other incarcerated individual? Obviously, we all know what those individuals, and that policy is not vague. And if that's vague, I don't know how the sheriff could ever make it less vague. So with that said, I think the district court was correct in dismissing those claims. With respect to the official capacity claims, the district court dismissed. I think he correctly pointed out that since all the constitutional challenges are meritless, official capacity claims have to fall. Then there's also the individual capacity claim. And the district court correctly noted that because of the lack of any clear precedent in this case, that the sheriff would nevertheless be entitled to qualified immunity. That really was not briefed by my opponent. So I think that argument is waived. And the last, I've only got two minutes. So let me just touch on briefly, this failure to amend. The failure to amend is not an absolute defectiveness of the district court's ruling, because the denial of a leave to amend is reviewed under the abuse of discretion standard A, which is a high standard that the court no doubt is aware. And that's found in your own precedent, the Carroll case from 2006. And there are permissible reasons why the denial of leave to amend. And that's under the Foleman United States Supreme Court's decision from 1962. And some of the things, some of the reasons why one can be denied a leave to amend, delay, bad faith, dilatory motive, and futility. Let's look at the facts that are in the record. The plaintiff filed a motion to compel on October 24, 2018, asking for information about a whole host of employees and other individuals that had some connection to the sheriff's office and gave names, right? There was an order issued by the magistrate court, which was never appealed to the district court on December 21, 2018, granting in part and denying in part the motion to compel. The motion to dismiss was not granted until August 2, 2019. So from December 2018 to August 2019, the plaintiff did nothing. He did not amend his complaint. He did not do anything else to say, ha-ha, now I have my equal protection claim fully briefed and ready to go. I need to amend my lawsuit. He waited eight months. And then when the district court finally decided to dismiss it in opposition, before he dismissed it in his opposition, he simply makes a conclusory statement that I'd like to leave to a man to make these claims better, all right? So why did he wait eight months? Why didn't he simply file a motion to amend his complaint? He had a right to do. He never did. He never even put in his opposition what ostensibly he would do to cure it. He would have to give names, races, and how they were treated differently than him. He's never done that. Never once. So the district court correctly noted it would be futile. And it was his own delay which caused him to be in the position he was. Therefore, the leave to amend was properly denied. All right. Thank you, Mr. Collins. I think you talk fast. You got your money's worth, huh? I did. You did do it. Thank you. Appreciate it. All right. Back to you, Mr. Demings. You just have two minutes that you reserved. He only reserved two minutes? Yeah, he had 18 and 2 is what he did. Oh, okay. That's what the sheet says. Go ahead, Mr. Demings. Get started. Okay. My opponent indicated that there were no cases in which any court has said that an employee can't be forced to choose between his employment and his fundamental constitutional rights. And that's simply not true. If you look at the Thorne v. City of El Segundo case, which is a Ninth Circuit case in 1983, that court specifically said, citing to the U.S. Supreme Court, that a potential employee of the state may not be required to forgo his or her constitutionally protected right simply to gain the benefits of city employment. Later, in the Briggs v. North Muskegon Police Department case, the court there, the Western District of Michigan, said that when a state acts as an employer, it may not, without substantial justification, condition employment under relinquishment of constitutional rights. So there are certainly cases out there that say that the state can't force an individual to choose between exercising his fundamental constitutional rights and choosing his. Are any of them U.S. Supreme Court or Fifth Circuit? Neither of those two cases are, but the Thorne case cites to the Kelly case out of the Supreme Court, 425 U.S. at 245, and also the Elrod v. Burns case, 427 U.S. at 347. The other thing, my opponent finished his argument by saying that the court, the district court, determined that leave to amend was futile and therefore not warranted. There is absolutely nothing in the district court's opinion that addresses my request to leave to amend and certainly no finding by the district judge that it was futile. What do you say to his position? Because that's why I asked you when you were up on the rec about how, you know, how clearly was this put to the district court? And I asked you and you responded to me that it was subsumed within your response. Council officer says there was a nine-month gap between things when you could have amended, filed, you know, what you intended to amend, et cetera, et cetera. He says basically you sat on it, did not formally file the motion to amend. So just respond to that. Your Honor, if I'm not mistaken, my motion to, or my opposition to the motion to dismiss was submitted before the motion to compel Mr. Collins was referencing. And in my opposition to the motion to dismiss, I set forth the position that, one, I believe that the case should not have been dismissed based on the allegations that were currently there, but then specifically set forth direct factual information that I had come into possession of since I had submitted my information that if the court deemed otherwise, I was requesting leave to amend. I did not file a separate motion for leave to amend because I believe the request in my opposition was sufficient that if the court determined that other factual information was required, my request to my opposition would serve to serve as a proper request for leave to amend. And as I mentioned, Your Honor, this case was in its infancy. There was no reason why the district court could not have granted leave to amend. Well, our standard of review on amendments is abuse of discretion. While on the one hand, you know, we say judges ought to allow amendment, you know, and so forth, you know, when practical. But on the other hand, it's abuse of discretion is the standard. And so that's why the question is to what extent and how, you know, it's all kind of teed up so the judge can deal with, particularly because your argument in part is the judge didn't respond to it at all. You didn't say denied that he didn't respond to it. And that's what triggered my query of, OK, does the judge really know that's what you have as opposed to viewing your opposition to the motion, but not really reading or viewing it that in within it is some request to amend the pleadings themselves. But I mean, you've answered what you did. So I'm going to ask you to repeat the question. But once counsel opposite mentioned this timeline, I just want to give you an opportunity to respond to this nine month timeline that he says, basically, you sat on it. That was it. All right. Thank you. All right. All right. Thank you. Any additional questions from the panel? Judge Dennis, Judge Haynes? No, thank you. All right. Thank you. I didn't see where the district judge said it would be futile. But your opposite of counsel said he did say that. And I didn't. And I misspoke when I said the judge said it was futile. I think the judge implicitly found it to be futile based on the record before him. I'm sorry, Judge. I didn't mean to imply that he actually specifically said that. OK. Thank you. Further questions by either judge? Any additional questions by either counsel? All right. This concludes the arguments in this case. The case will be submitted. Counsel, you are excused. And the panel will stand. This concludes our three days of oral arguments. So the panel actually will stand adjourned subject to our decision of these cases, as well as the other non-orally argued cases that were part of the docket for this week. Thank you. Court's adjourned. Thank you. Thank you.